## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JESSE SIMMONS**                                       **CIVIL ACTION**

**VERSUS**                                                 **NO.  06-2299**

**BURL CAIN**                                             **SECTION "S"(2)**


## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  <u>See</u> 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    STATE COURT PROCEDURAL BACKGROUND

The petitioner, Jesse Simmons, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  Simmons was charged by bill of information in Orleans Parish on September 11, 1997, with first degree robbery.[3]  The Louisiana Fourth Circuit Court of Appeal summarized the facts of the case as follows:

> On June 12, 1997, Brian Butler was employed to deliver pizzas in eastern New Orleans.  As he was opening his car door after attempting a nighttime delivery at an apartment complex, a man approached from behind. The man stuck an object wrapped in a white towel into Mr. Butler's back, leaned over his right shoulder and said, "Don't scream.  Give me your keys and the money in your pocket."  Because the object in his back felt like a gun, Mr. Butler surrendered his car keys and money as ordered.  The robber then moved to get into the driver's seat of the white 1992 Chevrolet Cavalier and Mr. Butler backed up a bit.  As the man asked which key operated the ignition, Mr. Butler was able to look at his face for one to three seconds.  After the robber drove off, Mr. Butler called the police from one of the apartments.  In addition to providing a description of the perpetrator, Mr. Butler reported that his checkbook and a handgun were among the items inside the stolen car.  The next morning, Mr. Butler notified his bank that his checkbook had been stolen, and the unwritten checks were cancelled.
>
> Two days later, the defendant, Jessie Simmons, tried to cash one of Mr. Butler's stolen checks at the drive-through window of a bank in eastern New Orleans.  Although Mr. Simmons matched the photo ID presented with the check, the drawer's signature on the check did not match the bank's computer records, so the teller sought out an officer to obtain approval.  Mr. Butler was called and asked if he had written a check to Jessie Simmons; Mr. Butler said no and explained that his checkbook had been stolen, along with his white Cavalier.  When the teller returned to her window, however, she found that Mr. Simmons had driven away.

---

[2]Rec. Doc. No. 1, Petition.

[3]St. Rec. Vol. 1 of 2, Bill of Information, 9/11/97.

The bank reported this incident to the police, including the fact that the man was driving a white Chevy Cavalier with handicap license number 36210. A detective phoned Mr. Butler to confirm that he had not written the check and briefly discussed the robbery two days earlier. The police then obtained an address for Jessie Simmons from police files; it was the same address as indicated for the holder of the handicap license plate. Detectives went to that address later that day, but no one answered their knocks on the door nor was the vehicle anywhere in sight.

The police went back to Jessie Simmons' address the next day, but, again, no one answered the door. However, as the officers were leaving the house they saw the missing vehicle go past with three women inside. After a brief pursuit, the car was stopped and the occupants were arrested for possession of stolen property. One of the women said that "the man who lives over there" gave them the car keys, pointing to the house the police had just checked. The white Cavalier was photographed, searched and processed for fingerprints. An engine part with an extension that resembled a gun barrel was found wrapped in a white cloth in the trunk, but no identifiable prints were found.

The next day, June 16, 1997, the police advised Mr. Butler that his car had been retrieved and that they would like him to view a photographic lineup of possible suspects. Six separate pictures were laid out for his examination, with no indication whether the man who had tried to cash the check was included among them. Mr. Butler considered the photos carefully, estimating that it took him fifteen minutes or so because the six individuals pictured appeared very similar. After using a piece of paper to simulate a head covered by a baseball cap, like the robber's, Mr. Butler selected a photo of the defendant, Jessie Simmons. An arrest warrant was obtained, and Mr. Simmons was apprehended on July 10, 1997.

State v. Simmons, 779 So.2d 856, 858-59 (La. App. 4th Cir. 2000); State Record Volume 1 of 2, Fourth Circuit Opinion, 99-KA-1154, pp.1-3, December 6, 2000.

Simmons was tried by a jury on August 31, 1998, and was found guilty as charged.[4]  At a hearing held September 18, 1998, the state trial court determined that Simmons was a third offender based on the multiple bill filed by the State.[5]  The state trial court sentenced Simmons to serve life in prison without benefit of parole, probation or suspension of sentence.[6]

On appeal, Simmons's counsel asserted four grounds for relief:[7] (1) The trial court erred in denying defendant's motion to suppress the identification, as the circumstances indicated a likelihood that there was a misidentification. (2) The evidence was insufficient to prove beyond a reasonable doubt that Simmons was guilty of first degree robbery. (3) The case should be remanded for a new multiple bill hearing because the record does not contain the evidence relied upon at the multiple offender hearing. (4) The trial court erred in imposing an unconstitutionally excessive sentence of life in prison.

---

[4]St. Rec. Vol. 1 of 2, Trial Minutes, 8/31/98; St. Rec. Vol. 1 of 2, Jury Verdict, 8/31/98; Trial Transcript, 8/31/98.

[5]St. Rec. Vol. 1 of 2, Minutes of Multiple Bill Hearing, 9/18/98; Multiple Bill, 9/18/98; Transcript of the Multiple Bill Hearing, 9/18/98 (erroneously dated 1999).

[6]St. Rec. Vol. 1 of 2, Minutes of Multiple Bill Hearing, 9/18/98; Sentencing Transcript, p. 11, 9/18/98.

[7]St. Rec. Vol. 1 of 2, Appeal Brief, 99-KA-1154, p.3, 1/7/00; State v. Simmons, 779 So.2d at 859, 861, 863; St. Rec. Vol. 1 of 2, 4th Cir. Opinion, 99-KA-1154, pp. 3, 8, 9, 11, 12/6/00. Simmons was granted leave to supplement the appeal but no pro se brief was filed.  St. Rec. Vol. 1 of 2, 4th Cir. Order, 99-KA-1154, 2/11/00.

The court found no merit to the first, second and fourth claims.  The court also found that the third claim, regarding the missing evidence from the multiple bill hearing, was barred from review because of the lack of a contemporaneous objection to the multiple bill or the evidence presented at the hearing.  Based on these findings, the Louisiana Fourth Circuit affirmed Simmons's conviction and sentence on December 6, 2000.[8]

Simmons's subsequent writ application to the Louisiana Supreme Court was denied without reasons on November 9, 2001.[9]  His conviction became final 90 days later, on February 7, 2002, when he did not file a writ application with the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

Simmons filed an application for post-conviction relief with the state trial court raising two claims[10] of ineffective assistance of trial and appellate counsel for failure to challenge (1) the use of the 1977 conviction in the multiple bill when the cleansing

---

[8]State v. Simmons, 779 So.2d at 864; St. Rec. Vol. 1 of 2, 4th Cir. Opinion, 99-KA-1154, p. 12, 12/6/00.

[9]State v. Simmons, 801 So.2d 364 (La. 2001).

[10]St. Rec. Vol. 2 of 2, Post Conviction Relief Application, signed 6/15/01.  The copy in the record does not bear a file stamp or a filing date.

period had passed; and (2) the use of the prior conviction for theft of over $500 as a basis for the life sentence because it was not a crime of violence.  On June 18, 2003, the state trial court denied the application, finding that the first claim was without merit because an objection had been lodged by counsel at the multiple bill hearing.[11]  The court further held that the second claim, as it related to the multiple offender sentence, was not cognizable on post-conviction review pursuant to La. Code Crim. P. art. 930.4 and State ex rel. Melinie v. State, 665 So.2d 1172 (La. 1996).

The Louisiana Fourth Circuit Court of Appeal denied Simmons's subsequent writ application on August 18, 2003, finding no error in the trial court's ruling.[12]

Simmons also filed a writ application with the Louisiana Supreme Court on September 18, 2003.[13]  This application was denied on October 15, 2004,[14] on procedural grounds, citing La. Code Crim. P. art. 930.8, State ex rel. Glover v. State, 660 So.2d 1189 (La. 1995),[15] La. Code Crim. P. art. 930.3 and State ex rel. Melinie.[16]

---

[11]St. Rec. Vol. 2 of 2, Judgment, 6/18/03.

[12]St. Rec. Vol. 2 of 2, 4th Cir. Order, 2003-K-1289, 8/18/03; 4th Cir. Writ Application, 2003-K-1289, 7/22/03.

[13]St. Rec. Vol. 2 of 2, La. S. Ct. Writ Application, 03-KH-2621, 9/18/03.

[14]State ex rel. Simmons v. State, 883 So.2d 1048 (La. 2004); St. Rec. Vol. 2 of 2, La. S. Ct. Order, 2003-KH-2621, 10/15/04.

[15]At the time of Simmons's conviction, La. Code Crim. P. art. 930.8 provided a three-year period for a defendant to file for post-conviction relief in the state courts.  In Glover, the Louisiana Supreme

6

While that writ application was pending, Simmons submitted a motion to vacate his habitual offender sentence with the state trial court on July 26, 2004.[17]  Simmons challenged the propriety of the convictions referenced in the bill of information and the State's failure to meet its burden of proof at the multiple bill hearing.  The state trial court denied the motion on August 2, 2004, declaring that the sentence was not illegal under Louisiana law.[18]

The Louisiana Fourth Circuit denied Simmons's subsequent writ application on procedural grounds as improper for post-conviction review, citing La. Code Crim. P. art. 930.3 and State ex rel. Melinie.[19]

Simmons also filed a writ application with the Louisiana Supreme Court on January 4, 2005.[20]  This application was denied on November 29, 2005, on procedural

Court held that an appellate court can deny post-conviction relief as untimely under Article 930.8, even if the lower court addressed the merits or did not consider timeliness.

[16]In Melinie, the Louisiana Supreme Court, relying on La. Code Crim. P. Art. 930.3, ruled that claims of excessive sentence or errors in sentencing which should be raised on direct appeal were not proper grounds for post-conviction relief.

[17]St. Rec. Vol. 2 of 2, Motion to Vacate Illegal Habitual Offender Sentence, signed 7/26/04.  The copy in the record does not bear a file stamp or filing date.

[18]St. Rec. Vol. 2 of 2, Judgment, 8/2/04.

[19]St. Rec. Vol. 2 of 2, 4th Cir. Order, 2004-K-1586, 11/12/04; 4th Cir. Writ Application, 2004-K-1586, 9/8/04.

[20]St. Rec. Vol. 2 of 2, La. S. Ct. Writ Application, 05-KH-0020, 1/4/05 (dated 12/6/04).

grounds, citing La. Code Crim. P. art. 930.8, <u>State ex rel. Glover</u>, La. Code Crim. P. art. 930.3 and <u>State ex rel. Melinie</u>.[21]

While the foregoing matters were pending, Simmons filed a second application for post-conviction relief in the state trial court asserting two grounds for relief:[22] (1) invalid sentence in light of an unconstitutional multiple offender rule, denial of notice, denial of jury trial, failure to establish guilt beyond a reasonable doubt and failure to impose a punishment responsive to the jury's verdict; (2) ineffective assistance of counsel for failure to object to the procedures used by the State and failure to object to the denial of his right to face his accusers.  The state trial court denied the application on November 19, 2004.[23]  The court held that the first claim was repetitive of issues addressed on appeal under La. Code Crim. P. art. 930.4(A) and was procedurally improper, citing the denial of his prior writ in <u>State ex rel. Simmons v. State</u>, 883 So.2d 1048 (La. 2004).  The court also held that the second claim was raised untimely under La. Code Crim. P. art. 930.8 and <u>State ex rel. Glover</u>.

---

[21]<u>State ex rel. Simmons v. State</u>, 916 So.2d 158 (La. 2005); St. Rec. Vol. 2 of 2, La. S. Ct. Order, 2005-KH-0020, 11/29/05.

[22]St. Rec. Vol. 2 of 2, Uniform Application for Post Conviction Relief, dated 7/28/04.  The copy in the record does not bear a file stamp or filing date.

[23]St. Rec. Vol. 2 of 2, Judgment, 11/19/04.

The Louisiana Fourth Circuit denied Simmons's subsequent writ application, finding no error in the trial court's judgment.[24]

Simmons also filed a writ application with the Louisiana Supreme Court on March 7, 2005.[25]  This application was denied on November 29, 2005, on procedural grounds, citing La. Code Crim. P. art. 930.8, State ex rel. Glover, La. Code Crim. P. art. 930.3 and State ex rel. Melinie.[26]

II.   FEDERAL HABEAS PETITION

On April 7, 2006, Simmons filed a federal habeas corpus petition, seeking relief on the following grounds:[27] (1) The record does not contain the evidence adduced at the prior multiple bill hearing. (2) There is no guilty plea recorded for the 1989 conviction in Case 336-240 Section "C," a predicate used to support the multiple bill. (3) The fingerprints used at the multiple bill hearing were unsuitable and not sufficient to prove his identification. (4) His trial and appellate counsel provided ineffective assistance when

---

[24]St. Rec. Vol. 2 of 2, 4th Cir. Order, 2004-K-2127, 1/13/05; 4th Cir. Writ Application, 2004-K-2127, 12/14/04.

[25]St. Rec. Vol. 2 of 2, La. S. Ct. Writ Application, 05-KH-559, 3/7/05 (dated 1/24/05).

[26]State ex rel. Simmons v. State, 916 So.2d 164 (La. 2005); St. Rec. Vol. 2 of 2, La. S. Ct. Order, 2005-KH-0559, 11/29/05.

[27]Rec. Doc. No. 1.

they failed to object to the multiple bill proceedings and allowed the 1977 conviction to be used in the multiple offender proceeding when the cleansing period had passed.

The State filed an answer in opposition to Simmons's petition, alleging that the claims raised had been dismissed by the state courts on state procedural grounds and were therefore inappropriate for review by this federal court.[28]  Alternatively, the State also argues that the first claim regarding missing evidence and the fourth claim regarding ineffective assistance of counsel are without merit.

III.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[29] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore

---

[28]Rec. Doc. No. 9.  The State suggests in its response that Simmons raised five claims in this petition.  He clearly raised only four.  The State apparently severed the third claim regarding the sufficiency of the fingerprint evidence into two claims.  The claims will be addressed as raised by Simmons.

[29]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

applies to Simmons's petition, which, for reasons discussed below, is deemed filed in this federal court no later than April 4, 2006.[30]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The record reflects that Simmons has exhausted all available state court remedies and the petition is timely filed.  However, the State has raised and I find that Simmons's claims are procedurally barred from federal review.

---

[30]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  Simmons's petition was filed by the clerk of court on April 7, 2006, when the filing fee was paid.  Simmons did not date his signature on the memorandum in support of the petition originally mailed to this Court on April 4, 2006.  The form petition was submitted later and was dated April 18, 2006.  Therefore, April 4, 2006, is the earliest date on which he could have delivered the memorandum to prison officials for mailing.  The fact that he paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition.  See Cousin v. Lensing, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

IV.   PROCEDURAL DEFAULT

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment.  Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir. 1995) (citing Harris v. Reed, 489 U.S. 255, 260, 262 (1989)).  This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.  Amos, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  Harris, 489 U.S. at 263; Glover, 128 F.3d at 902.  When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, it is presumed that the court relied upon the same grounds as the last reasoned state court opinion.  Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).

Simmons raised his first claim, regarding the missing multiple offender evidence, on direct appeal.  The last reasoned decision on the issue was that of the Louisiana Fourth

12

Circuit, which would not consider a challenge to the evidence because there was no contemporaneous objection to the evidence at the multiple bill hearing.

The remainder of Simmons's federal habeas claims were raised in his state applications for post-conviction relief, including the motion to vacate his habitual offender sentence. Each of these claims, including the ineffective assistance of counsel claims, was ultimately dismissed by the reasoned decisions of the Louisiana Supreme Court, which cited La. Code Crim. P. art. 930.8, State ex rel. Glover, La. Code Crim. P. art. 930.3 and State ex rel. Melinie as the procedural bases for denial of relief. The supreme court therefore denied relief on the basis that the application was untimely and the claims related to the sentencing or excessiveness of the sentence should have been raised on appeal and were not.[31]

Simmons suggests that the state courts erred in imposing these procedural bars to his claims because, under a broad reading, the nature and scope of his claims require a merits review. Even if Simmons's suggestion were true, a federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law. Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) and Lewis v. Jeffers, 497 U.S. 764, 780 (1990), and citing West v. Johnson,

---

[31]See footnotes 15 and 16, supra.

92 F.3d 1385, 1404 (5th Cir. 1996)); <u>accord</u> <u>Turner v. Johnson</u>, 46 F. Supp.2d 655, 674 (S.D. Tex. 1999).  Federal courts will not honor a procedural bar only when state courts apply a procedural bar that has <u>no</u> foundation in the record or basis in state law.  <u>Davis v. Johnson</u>, 2001 WL 611164 at *4 n.10 (N.D. Tex. May 30, 2001); <u>see also</u>, <u>Johnson v. Lensing</u>, 1999 WL 562728 at *4 (E.D. La. July 28, 1999) (Berrigan, J.) (La. Code Crim. P. art. 930.8 bar was not adequate because it was not properly applied under the circumstances of the case); <u>Poree v. Cain</u>, 1999 WL 518843 (E.D. La. July 20, 1999) (Mentz, J.) (same).  That exception does not apply in this case.

A.    <u>INDEPENDENT AND ADEQUATE</u>

   For the foregoing state-imposed procedural bars to prevent review by this federal habeas court, the bar must be independent and adequate.  A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar.  <u>Amos</u>, 61 F.3d at 338.  To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  <u>Glover</u>, 128 F.3d at 902.

1.    <u>CONTEMPORANEOUS OBJECTION RULE</u>

   The principal Louisiana statutory provision requiring contemporaneous objection is La. Code Crim. P. art. 841(A), which provides that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."  <u>Tasco v.</u>

14

Butler, 835 F.2d 1120, 1124 (5th Cir. 1988).   It is well-settled that Louisiana's contemporaneous-objection rule is an independent and adequate state procedural ground, regularly applied by the Louisiana courts.  Duncan v. Cain, 278 F.3d 537, 541 (5th Cir. 2002) (citing Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977)); Marshall v. Cain, 2006 WL 2414073 (E.D. La. Aug. 18, 2006) (Zainey, J.).  When the state court relies on this procedural default in dismissing the claim, as it did here, the claim is barred from federal habeas review. Duncan, 278 F.3d at 541.

2.     LA. CODE CRIM. P. ART. 930.8 AND STATE EX REL. GLOVER

The Louisiana Supreme Court also relied upon La. Code Crim. P. art. 930.8 and the decision in State ex rel. Glover, which would indicate that the claims related to the multiple offender evidence, adjudication and sentencing, including the adequacy of his representation in, and appeal from, that proceeding, were not timely filed.  As to the independence of Article 930.8, the United States Fifth Circuit Court of Appeals in Glover v. Cain held that denial of relief premised on the untimeliness of a claim under Article 930.8 "is sufficient to fulfill the independence requirement" of the procedural default doctrine.  Glover, 128 F.3d at 902.  The same is true in this case.  The Louisiana Supreme Court's rulings were clear and express in their reliance on Article 930.8 and State ex rel. Glover when denying Simmons's writ applications.

The United States Fifth Circuit has also squarely held that because "Louisiana courts have regularly invoked [Article 930.8] to bar untimely claims," it is an "adequate" rule, i.e., it "is one that state courts strictly or regularly follow, and one that is applied evenhandedly to the vast majority of similar claims." Id. (citing Dugger v. Adams, 489 U.S. 401, 410 n.6 (1989); Johnson v. Mississippi, 486 U.S. 578, 587 (1988); and Amos, 61 F.3d at 339).

Because the Louisiana Supreme Court's decisions rested on an independent and adequate state rule of procedural default, this court may not review Simmons's second, third and fourth federal habeas claims.

3.    LA. CODE CRIM. P. ART. 930.3 AND STATE EX REL. MELINIE

The Louisiana Supreme Court also relied upon La. Code Crim. P. art. 930.3 and State ex rel. Melinie, which would indicate that Simmons's claims related to the multiple bill adjudication and sentencing, including the quality of his representation in that proceeding, were barred from review because they were not challenged on direct appeal.

This court has repeatedly held that State ex rel. Melinie and La. Code Crim. P. art. 930.3 are independent and adequate state grounds for dismissal which bar review by the federal courts in a habeas corpus proceeding.  See, e.g., Neal v. Kaylo, No. 01-2211, 2001 WL 1195879 (E.D. La. Oct. 10, 2001) (Duplantier, J.) (Art. 930.3 and State ex rel. Melinie are independent and adequate); Leonard v. Hubert, No. 00-0511, 2001 WL

333123 (E.D. La. Apr. 4, 2001) (Schwartz, J.) (same); Marshall v. Hubert, No. 00-0334, 2000 WL 1059820 (E.D. La. July 31, 2000) (Duval, J.) (same); Ardis v. Cain, No. 99-1862, 1999 WL 997497 (E.D. La. Oct. 29, 1999) (Berrigan, J.) (same).

I find that the bar imposed under La. Code Crim. P. art. 930.3 and State ex rel. Melinie is also independent and adequate to bar review of the merits of Simmons's claims by this federal habeas corpus court.

Having reviewed the procedural bars imposed by the state courts, I also find that the bars act as a complete bar to review any of the claims raised by Simmons in the instant federal petition.

B.    CAUSE AND PREJUDICE

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice."  Glover, 128 F.3d at 902 (citing Coleman, 501 U.S. at 731-32); Amos, 61 F.3d at 338-39 (citing Harris, 489 U.S. at 262; Engle v. Isaac, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule.  Murray v. Carrier, 477 U.S. 478, 488 (1986).  The mere fact that

petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. Id. at 486.

In this case, Simmons has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana courts. My review of the record does not support a finding that any factor external to the defense prevented Simmons from raising the claims in a procedurally proper manner. The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

Construing his petition broadly, Simmons appears to suggest that his trial and appellate counsel failed properly to challenge the evidence adduced at the multiple bill hearing and the propriety of the underlying offenses. The law is settled that "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default." Murray, 477 U.S. at 486. Furthermore, Simmons's ineffective effective assistance of counsel claim is itself in procedural default. He has not suggested any cause for his failure properly and timely to raise that claim in the state courts. Therefore, as the United States Supreme Court has held, the defaulted ineffective assistance of his counsel claim does not constitute cause for the failure properly to raise the other defaulted claims. Edwards v. Carpenter, 529 U.S. 446, 452-54 (2000).

18

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." Hogue, 131 F.3d 466, 497 (5th Cir. 1997) (citing Engle, 456 U.S. at 134 n.43). Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and Simmons has not alleged any actual prejudice. Ratcliff v. Estelle, 597 F.2d 474 (5th Cir. 1979) (citing Lumpkin v. Ricketts, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Simmons's claims are therefore procedurally barred from review by this federal habeas corpus court. See Trest v. Whitley, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), vacated on other grounds, 522 U.S. 87 (1998).[32]

C.    FUNDAMENTAL MISCARRIAGE OF JUSTICE

Simmons may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. Hogue, 131 F.3d at 497 (citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992)). To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." Kuhlmann v. Wilson, 477 U.S. 436,

---

[32]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument sua sponte. Id.

454 (1986); accord Murray, 477 U.S. at 496; Glover, 128 F.3d at 902.  To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.  Campos v. Johnson, 958 F. Supp. 1180, 1195 (W.D. Tx. 1997) (footnote omitted); Nobles, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")  When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception.  Glover, 128 F.3d at 903.

Simmons does not present any indication and the record contains nothing that suggests his actual innocence on the underlying conviction for first degree robbery.  On the contrary, the record evidence of his guilt is substantial.  His claims address alleged procedural failings in the underlying criminal proceedings, not his actual innocence.  He presents no evidence or argument of innocence that was not already presented to and resolved by the jury and the state trial court.  For these reasons, Simmons has failed to overcome the procedural bar to his claims.  The claims are procedurally barred and must be dismissed with prejudice for that reason.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the petition of Jesse Simmons for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___6th___ day of November, 2006.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE